# DECLARATION - EXHIBIT 1

# SETTLEMENT AGREEMENT

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is entered into by and between Cody Kenney and Melissa Skinner, individually and on behalf of Participating Settlement Class Members (as defined in Paragraph 26) (together, "Plaintiffs"), and (2) Centerstone of America, Inc., Centerstone of Indiana, Inc., and Centerstone of Tennessee, Inc. ("Defendant" or "Centerstone") (collectively, the "Parties"), in the action styled *Kenney et al. v. Centerstone of America, Inc. et al.*, Civil Action No. 3:20-cv-01007, pending in the United States District Court for the Middle District of Tennessee, Nashville Division (the "Action").

# RECITALS

WHEREAS, on November 20, 2020, the Action was filed against Centerstone in the United States District Court for the Middle District of Tennessee, Nashville Division;

WHEREAS, the Action relates to a data breach disclosed by Centerstone on or about October 22, 2020, potentially affecting certain personal information of current and former Centerstone patients (the "Data Breach");

WHEREAS, Centerstone denies: a) the allegations and all liability with respect to any and all facts and claims alleged in the Action; b) that the class representatives in the Action and the class they purport to represent have suffered any damage; and c) that the Action satisfies the requirements to be certified or tried as a class action under the Federal Rules of Civil Procedure Rule 23;

WHEREAS, the Parties agreed to engage the Honorable Wayne R. Andersen (United States District Court Judge, Ret.) of JAMS ADR as a mediator to oversee settlement negotiations in the Actions. In advance of formal mediation, Centerstone provided informal discovery related to the merits of Plaintiffs' claims and class certification and the parties discussed their respective positions on the merits of the claims and class certification; and

WHEREAS, following extensive arm's length settlement negotiations, conducted through Judge Andersen that included a mediation session on March 12, 2021, the Parties executed a binding term sheet setting forth the essential terms of this Agreement;

NOW, THEREFORE, in exchange for the mutual promises and valuable consideration provided for in this Agreement, and without any admission or concession by either Party, the Parties agree to a full, complete, and final settlement and resolution of the Action, subject to Court approval, on the following terms and conditions:

## I. DEFINITIONS

In addition to terms defined at various points within this Agreement, the following defined terms shall have the meanings set forth below:

1. "Action" means *Kenney et al. v. Centerstone of America, Inc. et al.*, Civil Action No. 3:20-cv-01007, pending in the United States District Court for the Middle District of Tennessee, Nashville Division.

2. "Approved Claim" means a Claim Form timely submitted by a Participating Settlement Member that has been approved by the Settlement Administrator.

3. "Attested Time" means time spent remedying issues related to the Data Breach, as provided in Section III of this Agreement.

4. "Centerstone's Counsel" means Lewis Brisbois Bisgaard & Smith, LLP and Butler Snow LLP.

5. "Claim Form" or "Claim" means the form(s) Participating Settlement Class Members must submit to be eligible for reimbursement of Out-of-Pocket Losses, Attested Time, and/or to claim Credit Monitoring Services under the terms of the Settlement, which is attached hereto as Exhibit D.

6. "Claims Deadline" means the last day to submit a timely Claim Form(s), which will occur seventy-five (75) days from the Notice Deadline.

7. "Claims Period" means the period of time during which Settlement Class Members may submit Claim Forms to receive Settlement benefits, which will end on the Claims Deadline.

8. "Class Counsel" means David K. Lietz and Gary M. Klinger of Mason Lietz & Klinger LLP.

9. "Settlement Class Representatives" means Cody Kenney and Melissa Skinner.

10. "Court" means the Honorable Eli J. Richardson in the United States District Court for the Middle District of Tennessee, or such other judge to whom the Action may hereafter be assigned.

11. "Data Breach" means the data breach initially disclosed by Centerstone in or about October 22, 2020.

12. "Effective Date" means one (1) business day following the latest of: (i) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order and Judgment or one (1) business day following entry of the Final Approval Order and Judgment if no parties have standing to appeal and no objections have been filed to the Agreement; or (ii) if any appeal, petition, request for rehearing, or other review has been filed, one (1) business day after the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing, or other review is pending, and the time for further appeals, petitions, requests for rehearing, or other review has expired.

13. "Fee Application" means any motion for an award of attorneys' fees, Litigation Costs and Expenses, and Service Award Payments as set forth in Paragraphs 71 and 73.

14. "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of Litigation Costs and Expenses awarded by the Court to Class Counsel.

15. "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Approval Hearing, which finally approves the Settlement Agreement, certifies the Settlement Class, dismisses the Action with prejudice, otherwise satisfies the settlement-related provisions of Federal Rules of Civil Procedure 23 and 58, and is consistent with all material provisions of this Settlement Agreement. Class Counsel and Centerstone's Counsel will work together on a proposed Final Approval Order and Judgment, which Centerstone must approve before filing.

16. "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.

17. "Identity Theft Monitoring Services" means Two (2) Years Identity Theft Monitoring for those Class Members whose personal or financial information was potentially impacted in the Data Breach, and who did not opt in for the credit monitoring services Defendant offered in connection with the consumer notice and one (1) additional year of Identity Theft Monitoring for those Class Members who elected to receive the initial one year of monitoring that Defendant offered as part of the notice of Data Breach sent to consumers. The Identity Theft Monitoring will have: real time monitoring of the credit file at all three bureaus; Dark web scanning with immediate notification of potential unauthorized use; Comprehensive public record monitoring; Medical identity monitoring; Identity theft insurance (no deductible), and; Access to fraud resolution agents to help investigate and resolve identity. The cost of Identity Theft Monitoring Services will be paid by Centerstone.

18. "Litigation Costs and Expenses" means reasonable costs and expenses incurred by counsel for Plaintiffs in connection with commencing, prosecuting, and settling the Action and any threatened litigation by other Class Members and their counsel (if any), all of which shall not exceed $410,000 as approved by the Court.

19. "Maximum Payout Under Settlement" means the maximum payment obligation for the Defendant under this Settlement for Claims made, costs for claimed Identity Theft Monitoring Services, Settlement Administration Costs, Service Award to Named Plaintiffs, and Attorney's Fees will be $1,500,000. The maximum amount available to pay Claims under will be determined once Settlement Administration Costs, Service Award to Plaintiff, Identity Theft Monitoring Services claimed under this Agreement, and Attorney's Fees owed are deducted. If the amount remaining under the Maximum Payout total under this Agreement is exceeded by amounts claimed for benefits claimed, there will be a pro-rata reduction.

20. "Notice" means notice of the proposed class action Settlement to be provided to Settlement Class Members pursuant to the Preliminary Approval Order. Notice includes the Postcard Notice (Exhibit A), Email Notice (Exhibit B) and Longform Notice (Exhibit C).

21. "Notice Deadline" means the last day by which Notice must issue to the Settlement Class Members, and will occur thirty (30) days after entry of the Preliminary Approval Order.

22. "Notice and Administrative Expenses" means all of the expenses incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with providing Notice to the Settlement Class, locating Settlement Class Members, processing claims, determining the eligibility of any person to be a Settlement Class Member, and administering, calculating and distributing the Settlement funds to Settlement Class Members. Administrative Expenses also includes all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

23. "Objection Deadline" is the last day on which a Settlement Class Member may file an objection to the Settlement or Fee Application, which will be forty-five (45) days after the Notice Deadline.

24. "Opt-Out Deadline" is the last day on which a Settlement Class Member may file a request to be excluded from the Settlement Class, which will be forty-five (45) days after the Notice Deadline.

25. "Out-of-Pocket Losses" means documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are fairly traceable to the Data Breach, and that have not already been reimbursed by a third party. Out-of-Pocket Losses may include, without limitation, unreimbursed costs associated with fraud or identity theft including professional fees including attorneys' fees, accountants' fees, and fees for credit repair services and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges, as well as costs for credit monitoring costs or other mitigative services that were incurred on or between October 22, 2020 and the date of the close of the Claims Period.

26. "Participating Settlement Class Member" means a Settlement Class Member who does not submit a valid Request for Exclusion prior to the Opt-Out Deadline.

27. "Preliminary Approval Order" means an order directing issuance of Notice to Settlement Class Members, determining that the Court will likely be able to approve the Settlement under Federal Rule of Civil Procedure 23, and determining that the Court will likely be able to certify the Settlement Class for purposes of judgment, that is consistent with all material provisions of this Settlement Agreement. Class Counsel and Centerstone's Counsel will work together on a proposed Preliminary Approval Order, which Centerstone must approve before filing.

28. "Released Claims" means any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest or expenses) that the Releasing Parties had, have or may claim now or in the future to have (including, but not limited to, assigned claims and any and all "Unknown Claims" as defined below) that were or could have been asserted or alleged arising out of the same nucleus of operative facts as any of the claims alleged or asserted in the Action, including but not limited to the facts, transactions, occurrences, events, acts, omissions, or failures to act that were alleged, argued, raised or asserted in any pleading or court filing in the Action, including but not limited to those concerning the Centerstone Data Breach.

29. "Request for Exclusion" is the written communication by or on behalf of a Settlement Class Member in which he or she requests to be excluded from the Settlement Class in the form and manner provided for in the Notice.

30. "Service Award Payment" means compensation awarded by the Court and paid to the Settlement Class Representatives in recognition of their role in this litigation, which shall not exceed $2,500 to each Settlement Class Representative, as approved by the Court.

31. "Settlement" means the settlement of the Actions by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

32. "Settlement Administration Costs" shall mean the costs incurred by the Settlement Administrator, including the cost of Notice, and shall not exceed $125,000.

33. "Settlement Administrator" means KCC, subject to Court approval. Class Counsel and Centerstone's Counsel may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

34. "Settlement Class" means all individuals who were mailed a notification by or on behalf of Centerstone on or about October 22, 2020 regarding the Data Breach.

35. "Settlement Class List" means the list generated by Centerstone containing the full names, current or last known addresses, personal email addresses where known, and birthdates for Settlement Class members under the age of eighteen (18), for all persons who fall under the definition of the Settlement Class, which Centerstone shall provide to the Settlement Administrator within twenty-one (21) days of the Preliminary Approval Order.

36. "Settlement Class Member" means an individual who falls within the definition of the Settlement Class.

37. "Settlement Payment" or "Settlement Check" mean the payment to be made via mailed check and/or electronic payment to a Participating Settlement Class Member pursuant to Paragraphs 44-48.

38. "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following entry of the Preliminary Approval Order, but prior to the mailing of the Notice, as a means for Settlement Class Members to obtain notice of and information about the Settlement and relevant case documents and deadlines. The Settlement Website shall contain relevant documents, including, but not limited to, the Notice, this Agreement, Plaintiffs' motion for preliminary approval of the Settlement, the Preliminary Approval Order, Plaintiffs' Fee Application, and the operative complaint in the Action. The Settlement Website shall also include a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. The Settlement Website shall not include any advertising and shall remain operational until at least thirty (30) days after all Settlement Payments have been distributed.

## II. REIMBURSEMENT FOR OUT-OF-POCKET LOSSES AND ATTESTED TIME

39. **Reimbursement for Out-of-Pocket Losses**. Subject to the Maximum Payout Under Settlement, the following compensation will be paid by Centerstone to Settlement Class Members who submit valid and timely Claim Forms. Claims will be subject to review for completeness and plausibility by a Settlement Administrator.

   a. <u>Compensation for Ordinary Losses:</u> Centerstone will provide compensation for unreimbursed losses, up to a total of $500.00 per person, upon submission of a Claim Form and supporting documentation, for the following losses:

   (1) Documented Out-of-Pocket Losses incurred as a result of the Centerstone Data Breach, including bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel;

   (2) Documented fees for additional credit reports, credit monitoring, or other identity theft insurance products purchased between October 22, 2020 and the date of the Preliminary Approval Order;

   (3) Up to 4 hours of Attested Time, at $15/hour, if at least one full hour was spent dealing with the Data Breach.[1] For Attested Time, a sworn attestation detailing how the time was spent shall constitute "supporting documentation."

---

[1] Claims for lost time are included within the $500 cap on ordinary losses.

4814-8235-8502.1

b. <u>Compensation for Extraordinary Losses</u>: Centerstone will provide up to $2,500.00 in compensation to each Settlement Class Member for proven monetary loss including, *inter alia*, losses arising from financial fraud or identity theft if:
   (1) The loss is an actual, documented, and unreimbursed monetary loss;
   (2) The loss is fairly traceable to the Data Breach;
   (3) The loss occurred during the period from December 12, 2019 through and including the end of the applicable claims period;
   (4) The loss is not already covered as an "Ordinary Loss" pursuant to Paragraph 39(a) herein; and
   (5) The Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss.

40. **Assessing Claims for Out-of-Pocket Losses**. The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Out-of-Pocket Losses reflects valid Ordinary Losses actually and reasonably incurred and, for Extraordinary Losses (as that term is used in Paragraph 39(b) of this Agreement), reflects losses that are fairly traceable to the Data Breach, but may consult with Class Counsel and Centerstone's Counsel in making individual determinations. In assessing what qualifies as "fairly traceable," the Settlement Administrator will consider (i) whether the timing of the loss occurred on or after December 12, 2019 (or for credit monitoring service cost claimed, after October 22, 2020); and (ii) whether the Personal Information used to commit identity theft or fraud consisted of the type of Personal Information identified in Centerstone's notices of the Data Breach. Costs expended for mitigation measures like fraud resolution services, and professional services incurred to address identity theft or fraud on or after December 12, 2019, or on or after October 22, 2020 for credit monitoring services, shall be presumed "reasonably incurred." The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

41. **Assessing Claims for Attested Time**. The Settlement Administrator shall have the sole discretion and authority to determine whether the prerequisites have been met in order to award payments of Attested Time, but may consult with Class Counsel and Centerstone's Counsel in making individual determinations. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

42. **Disputes**. To the extent the Settlement Administrator determines a claim for Out-of-Pocket Losses or Attested Time is deficient in whole or part, within a reasonable time of making such a determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member twenty-one (21) days to cure the deficiencies. Such notifications shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such notifications shall be sent via U.S. mail. If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within ten (10) days of the determination. The Settlement Administrator may consult with Class Counsel and Centerstone's Counsel in making such determinations.

### III. IDENTITY THEFT MONITORING SERVICES

43. **Identity Theft Monitoring Services**. Centerstone shall offer to all Settlement Class Members Identity Theft Monitoring for (1) two (2) years to those Class Members whose

personal or financial information was potentially impacted in the Data Breach, and who did not opt in for the credit monitoring services Defendant offered in connection with the consumer notice and (2) one (1) additional year to those Class Members who elected to receive the initial one year of monitoring Defendant offered as part of the notice sent to consumers. The Identity Theft Monitoring will have:

   i. Real time monitoring of the credit file at all three bureaus;
   ii. Dark web scanning with immediate notification of potential unauthorized use;
   iii. Comprehensive public record monitoring;
   iv. Medical identity monitoring;
   v. Identity theft insurance (no deductible), and;
   vi. Access to fraud resolution agents to help investigate and resolve identity thefts.

## IV.   PAYMENTS TO PARTICIPATING SETTLEMENT CLASS MEMBERS

44. **Payment Timing**. Payments for Approved Claims for reimbursement for approved Out-of-Pocket Losses as set forth in Paragraph 39 shall be issued in the form of a check mailed and/or an electronic payment as soon as practicable after the allocation and distribution of funds are determined by the Settlement Administrator following the Effective Date.

45. **Timing**. Settlement Checks shall bear in the legend that they expire if not negotiated within one hundred and eighty (180) days of their date of issue.

46. **Returned Checks**. For any Settlement Check returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to locate a valid address and resend the Settlement Payment within thirty (30) days after the check is returned to the Settlement Administrator as undeliverable. In attempting to locate a valid address, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that Participating Settlement Class Member to obtain updated address information. Any replacement Settlement Checks issued to Participating Settlement Class Members shall remain valid and negotiable for ninety (90) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Participating Settlement Class Members within that time.

47. **Uncashed Checks**. To the extent that a Settlement Check is not cashed within 180 days after the date of issue, the Settlement Administrator shall undertake the following actions: (1) attempt to contact the Participating Settlement Class Member by e-mail and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the Participating Settlement Class Member using advanced address searches or other reasonable methods; and (3) mailing the Participating Settlement Class Member a postcard (either to an updated address if located or the original address if not) providing information regarding how to obtain a reissued check. Upon request of a Participating Settlement Class Member, the Settlement Administrator may re-issue a check for up to an additional 90-day period following the original 180-day period. Any reissued Settlement Checks issued to Participating Settlement Class Members shall remain valid and negotiable for ninety (90) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Participating Settlement Class Members within that time.

48. **Deceased Class Members**. If the Settlement Administrator is notified that a Participating Settlement Class Member is deceased, the Settlement Administrator is authorized to reissue the Settlement Check to the Participating Settlement Class Member's estate upon receiving proof the Participating Settlement Class Member is deceased and after consultation with Class

Counsel and Centerstone's Counsel.

## V. CLAIMS, CAPS, AND DISTRIBUTION OF SETTLEMENT FUNDS

49. **Submission of Electronic and Hard Copy Claims**. Participating Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via a claims website or physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline.

50. **Total Cap on Settlement Class Payout**. The sum total of payments made to Settlement Class members, cost for claimed Identity Theft Monitoring Services, Settlement Administration Fees, Service Award to Named Plaintiffs, and Attorneys' Fees and costs shall not exceed $1,500,000.00. In the event total claims exceed the net amount of Settlement funds left after payment of Administration Fees, Attorneys' fees and expenses, and Service Awards, the claim of each Settlement Class member shall be reduced on a *pro rata* basis.

51. **Order of Distribution of Funds**. The Settlement Fund shall be used to pay, in the following order: (1) all Notice and Administration Expenses; (2) any award of Attorneys' Fees and Expenses approved by the Court; (3) any Service Award to the Settlement Class Representative; (4) Approved Claims for Ordinary Losses, Extraordinary Losses, and Identity Theft Monitoring Services.

## VI. EQUITABLE RELIEF

52. **Remedial Measures/Security Enhancements**: Centerstone improved information security enhancements to date, and will commit to additional information security enhancements in each of years 2020, 2021, and 2022. The enhancements include third party security monitoring, third party logging, network monitoring, firewall enhancements, email enhancements, and equipment upgrades.

## VII. SETTLEMENT CLASS NOTICE

53. **Notice**. Within twenty one (21) days after the date of the Preliminary Approval Order, Centerstone shall provide the Settlement Class List to the Settlement Administrator. Within thirty (30) days after the date of the Preliminary Approval Order, the Settlement Administrator shall disseminate Notice to the members of the Settlement Class.

54. **Manner of Giving Notice.** Subject to Court approval, the Settlement Administrator will provide the Class Notice to all Class Members as described herein. The cost of such notice will be paid from the Notice and Administration Expenses. Class Counsel may direct the Settlement Administrator to send reminder notices to Settlement Class Members at any time prior to the Claims Deadline.

   a. **Email Notice.** As soon as practicable, but starting no later than 30 days from the date of the Preliminary Approval Order, the Settlement Administrator shall send the Email Notice to all Class Members for whom Centerstone provided an email address. It will be conclusively presumed that the intended recipients received the Email Notice if the Settlement Administrator did not receive a hard bounce-back message.

   b. **Postcard Notice.** As soon as practicable, but starting no later than 30 days from the date of the Preliminary Approval Order, the Settlement Administrator shall

disseminate the Postcard Notice via First Class Mail to all Settlement Class Members whose email addresses are not known or available. Before mailing the Postcard Notice, the Settlement Administrator will update the addresses provided by Centerstone with the National Change of Address database. It shall be conclusively presumed that the intended recipients received the Postcard Notice if the mailed Postcard Notices have not been returned to the Settlement Administrator as undeliverable within fifteen (15) days of mailing.

    c.    **Settlement Website.** Prior to the date on which the Settlement Administrator initiates the Notice, the Settlement Administrator shall establish the Settlement Website. The Parties shall meet and confer and choose a mutually acceptable URL for the Settlement Website. The Settlement Website shall remain accessible until thirty (30) days after the Settlement Administrator has completed its obligations under the Settlement Agreement. The Settlement Website shall contain: the Settlement Agreement; contact information for Class Counsel and Centerstone's Counsel; contact information for the Settlement Administrator; the publicly filed motion for preliminary approval, motion for final approval and for attorneys' fees and expenses (when they become available); the signed preliminary approval order; and a downloadable and online version of the Claim Form and Longform Notice.

## VIII. OPT-OUTS AND OBJECTIONS

55.    **Opt-Outs**. The Notice shall explain the procedure for Settlement Class Members to exclude themselves or "opt-out" of the Settlement by submitting a Request for Exclusion to the Settlement Administrator postmarked no later than forty-five (45) days after the Notice Deadline. The Request for Exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication. The Notice must state that any Settlement Class Member who does not file a timely Request for Exclusion in accordance with this Paragraph will lose the opportunity to exclude himself or herself from the Settlement and will be bound by the Settlement.

56.    **Objections**. The Notice shall explain the procedure for Settlement Class Members to object to the Settlement or Fee Application by submitting written objections to the Settlement Administrator postmarked no later than forty-five (45) days after the Notice Deadline. The written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. The Notice must set forth the time and place of the Final Approval Hearing (subject to change) and state that any Settlement Class Member who does not file a timely and adequate objection in accordance with this Paragraph waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement.

## IX. DUTIES OF THE SETTLEMENT ADMINISTRATOR

57.    **Settlement Administration Process:** Once a Settlement Administrator is mutually agreed to by the parties and after the settlement is preliminarily approved by the Court, the Settlement Administrator will mail to each Settlement Class member a postcard (1) notifying the

Settlement Class member of the settlement and its terms; (2) providing the Settlement Class Member with the URL settlement website, and (3) instructing the Settlement Class Member on how to make a claim. The Settlement Administrator will also provide Notice via e-mail to Settlement Class Members whose personal e-mail addresses are known. Centerstone will cooperate in providing to the Settlement Administrator class member contact information, including physical addresses and email addresses (if available), which will be kept strictly confidential between the Administrator, Centerstone, and Class Counsel. After the Court enters an order finally approving the Settlement, the Settlement Administrator shall provide the requested relief to all Settlement Class Members, subject to the total cap on settlement class payout. Cash payments to Settlement Class Members will be made by check or electronic payment sent from the Administrator. Prior to mailing settlement checks, the Administrator shall attempt to update the last known addresses of the Settlement Class Members through the National Change of Address system or similar databases.

58. **Duties of Settlement Administrator**. The Settlement Administrator shall perform the functions and duties necessary to effectuate the Settlement and as specified in this Agreement, including, but not limited to, the following:

   d. Administering, and overseeing the Settlement funds provided by Centerstone to paid approved Claims;

   e. Obtaining the Settlement Class List for the purpose of disseminating Notice to Settlement Class Members;

   f. Providing Notice to Settlement Class Members via U.S. mail and e-mail;

   g. Establishing and maintaining the Settlement Website;

   h. Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries within one (1) business day;

   i. Responding to any mailed or emailed Settlement Class Member inquiries within one (1) business day;

   j. Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members and transmitting to Class Counsel and Centerstone's Counsel a list of approved Claims both periodically during the Claims Period and after the Claims Deadline;

   k. Receiving Requests for Exclusion and objections from Settlement Class Members and providing Class Counsel and Centerstone's Counsel a copy thereof no later than three (3) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion, objections, or other requests from Settlement Class Members after the Opt-Out and Objection Deadlines, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and to Centerstone's Counsel;

   l. Working with the provider of Credit Monitoring Services to receive and send activation codes within thirty (30) days of the Effective Date;

m.  After the Effective Date, processing and transmitting Settlement Payments to Settlement Cass Members;

n.  Providing weekly or other periodic reports to Class Counsel and Centerstone's Counsel that include information regarding the number of Settlement Checks mailed and delivered, Settlement Checks cashed, undeliverable information, and any other requested information relating to Settlement Payments;

o.  In advance of the Final Approval Hearing, preparing a sworn declaration to submit to the Court that: (i) attests to implementation of Notice in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly submitted a Request for Exclusion; and

p.  Performing any function related to Settlement administration at the agreed-upon instruction of Class Counsel or Centerstone's Counsel, including, but not limited to, verifying that Settlement Payments have been distributed.

59. **Limitation of Liability**. The Parties, Class Counsel, and Centerstone's Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement funds; (iii) the formulation, design or terms of the disbursement of the Settlement funds; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement funds; or (v) the payment or withholding of any Taxes and Tax-Related Expenses.

60. **Indemnification**. The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and Centerstone's Counsel for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement funds; (iii) the formulation, design or terms of the disbursement of the Settlement funds; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement funds; (v) any losses suffered by, or fluctuations in the value of the Settlement funds; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

61. **Settlement Administration Fees**. All settlement administration fees will be paid from the Settlement funds and they are, in all events, solely to be borne by Centerstone, up to a maximum of $125,000.

## X.  PRELIMINARY APPROVAL, FINAL APPROVAL, AND JURISDICTION

62. **Certification of the Settlement Class**. For purposes of this Settlement only, the Parties stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date.

63. **Preliminary Approval**. Following execution of this Agreement, Class Counsel shall file a motion for preliminary approval of the settlement within twenty-one (21) days of its execution.

64. **Final Approval**. Class Counsel shall move the Court for a Final Approval Order and Judgment of this Settlement, to be issued following the Final Approval Hearing within a reasonable time after the Notice Deadline, Objection Deadline, and Opt-Out Deadline.

65. **Jurisdiction**. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

## XI. MODIFICATION AND TERMINATION

66. **Modification**. The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

67. **Decertification of the Settlement Class if Settlement Not Approved.** If: (1) the Court does not issue the Preliminary Approval Order or Final Approval Order and Judgment; or (2) the Effective Date does not occur, the certification of the Settlement Class shall be void. Centerstone reserves the right to contest class certification for all other purposes. Any orders preliminarily or finally approving the certification of any class contemplated by the Settlement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion. In addition, the fact that Centerstone did not oppose certification of a class under the Settlement shall not be used or cited thereafter by any person or entity, including in a contested proceeding relating to class certification.

## XII. RELEASES

68. **The Release**. Upon the Effective Date, and in consideration of the Settlement benefits described herein, each of the Settlement Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns shall be deemed to have released, acquitted, and forever discharged any and all Released Claims against Centerstone and its present and former predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors, and assigns of any of the foregoing. The relief stated above will be provided to Class Members as consideration for a general release of Centerstone for all claims and causes of action pleaded or that could have been pleaded that are related in any way to the activities stemming from the Centerstone Data Breach described in the operative Complaint.

69. **Unknown Claims**. The Released Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been raised in the Action and that any of the Settlement Class Representatives or Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns does not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release Centerstone and its present and former predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors, and assigns of any of the foregoing or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement. Upon the Effective Date, the Settlement Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Upon the Effective Date, each of the Settlement Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns s shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. The Settlement Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Paragraph.

70. **Bar to Future Suits.** Upon entry of the Final Approval Order and Judgment, the Settlement Class Representatives and other Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order. Likewise, Centerstone and its representatives, officers, agents, directors, affiliates, employees, insurers, and attorneys shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against Settlement Class Representatives and Class Counsel or based on any actions taken by Settlement Class Representatives and Class Counsel that are authorized or required by this Agreement or by the Final Approval Order. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

## XIII. SERVICE AWARD PAYMENTS

71. **Service Award Payments**. At least fourteen (14) days before the Opt-Out and Objection Deadlines, Class Counsel will file a Fee Application that will include a request for Service Award Payments for the Settlement Class Representatives in recognition for their contributions to this Action. The named Plaintiffs shall seek, and Centerstone agrees to pay a service award up to $2,500 each Settlement Class Representative, subject to Court approval. This service award shall be separate and apart from any other benefits available to the Settlement Class Representatives and Participating Settlement Class Members under the terms of this Agreement. The Settlement Administrator shall make the Service Award Payments to the Settlement Class Representatives from the Settlement funds. Such Service Award Payment shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than thirty (7) days after the Effective Date.

72. **No Effect on Agreement**. In the event the Court declines to approve, in whole or in part, the payment of service awards in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the service awards shall constitute grounds for termination of this Agreement.

## XIV. ATTORNEYS' FEES, COSTS, EXPENSES

73. **Attorneys' Fees and Costs and Expenses**. At least fourteen (14) days before the Opt-Out and Objection Deadlines, Class Counsel will file a Fee Application for an award of attorneys' fees and Litigation Costs and Expenses to be paid from the Settlement funds. Centerstone agrees not to oppose an application by Plaintiffs' counsel for an award of attorneys' fees, costs, and expenses up to $410,000.00 (27 1/3% of the $1,500,000.00 Settlement Cap). Prior to the disbursement or payment of the Fee Award and Costs under this Agreement, Class Counsel shall provide to Centerstone and the Settlement Administrator a properly completed and duly executed IRS Form W-9. Fee Award and Costs (plus any interest accrued thereon) shall be paid by the Settlement Administrator or directly by Centerstone, in the amount approved by the Court, no later than seven (7) days after the Effective Date.

74. **Allocation**. Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst Plaintiffs' counsel and any other attorneys. Centerstone shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

## XV. NO ADMISSION OF LIABILITY

75. **No Admission of Liability**. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

76. **No Use of Agreement**. Neither the Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs; or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or

omission by Centerstone in the Action or in any proceeding in any court, administrative agency or other tribunal.

## XVI. MISCELLANEOUS

77. **Integration of Exhibits**. The exhibits to this Agreement and any exhibits thereto are a material part of the Settlement and are incorporated and made a part of the Agreement.

78. **Execution in Counterparts.** This Agreement shall become effective upon its execution by the Parties, Class Counsel, and counsel for Centerstone. The Agreement may be executed in counterparts. Each counterpart shall be deemed an original, and execution of the counterparts shall have the same force and effect as if all Parties had signed the same instrument.

79. **No Construction Against the Drafter.** This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement. The Settlement Class Representatives and Centerstone each acknowledge that each have been advised and are represented by legal counsel of his or her own choosing throughout the negotiations preceding execution of this Agreement and have executed the Agreement after having been so advised.

80. **Entire Agreement**. This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter hereof and shall supersede any previous agreements, representations, communications and understandings among the Parties. This Agreement may not be changed, modified, or amended except in writing signed by all Parties, and, once a motion for Preliminary Approval has been filed, subject to Court approval. The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent agreement of the Parties.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS HEREOF**, the undersigned have caused this Settlement Agreement to be executed as of the dates set forth below.

CODY KENNEY, individually and as Class Representative

Signature: _____

Date: _____

MELISSA SKINNER, individually and as Class Representative

Signature: _Melissa D Skinner (Apr 23, 2021 22:41 EDT)_

Date: Apr 23, 2021

CENTERSTONE OF AMERICA, INC.
CENTERSTONE OF INDIANA, INC.
CENTERSTONE OF TENNESSEE, INC.

By: _Steven C Holman_

Print Name: Steven C Holman

Title: CFO

Date: 4/23/21

MASON LIETZ & KLINGER LLP, as Class Counsel

By: _David Lietz_

Print Name: David Lietz

Date: Apr 23, 2021

LEWIS BRISBOIS BISGAARD & SMITH, LLP, as Defendants' Counsel

By: _____

Print Name: _____

Date: _____

4814-8255-8502.1 16

IN WITNESS HEREOF, the undersigned have caused this Settlement Agreement to be executed as of the dates set forth below.

CODY KENNEY, individually and as Class Representative

Signature: _____ (Cody Kenney (Apr 26, 2021 09:10 EDT))

Date: Apr 26, 2021

MELISSA SKINNER, individually and as Class Representative

Signature: _____

Date: _____

CENTERSTONE OF AMERICA, INC.
CENTERSTONE OF INDIANA, INC.
CENTERSTONE OF TENNESSEE, INC.

By: _____

Print Name: _____

Title: _____

Date: _____

MASON LIETZ & KLINGER LLP, as Class Counsel

By: _____

Print Name: _____

Date: _____

LEWIS BRISBOIS BISGAARD & SMITH, LLP, as Defendants' Counsel

By: _____ (signature)

Print Name: Eric Kizirian

Date: April 21, 2021

BUTLER SNOW LLP, as Defendants' Counsel

By: /s/ Valerie Diden Moore

Print Name: Valerie Diden Moore

Date: April 23, 2021